IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BAILEY<br>827 Sterling Place<br>Apt 4F<br>Brooklyn, NY 11216<br><br>    Plaintiff,<br>  v.<br><br>FORTUNE MEDIA USA CORPORATION<br>40 Fulton St.<br>New York, NY 10038<br>    and<br>ADP TotalSource FL XVI, INC.<br>10200 Sunset Dr.<br>Miami, FL 33173<br><br>    Defendants. | Docket No.: 25-8312<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Nicholas Bailey (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Fortune Media USA Corporation and ADP TotalSource FL XVI, Inc. (hereinafter collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d et seq.), 42 U.S.C. Section 1981, the New York State Human Rights Law ("NYSHRL" - N.Y. Exec. Law §§ 290 et. seq.) and the New York City Human Rights Law, N.Y.C. Admin. Code ("NYCHRL"). Plaintiff asserts, *inter alia*, that his employment was unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state and city law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendants Fortune Media USA Corporation (hereinafter "Defendant Fortune") is a global media organization that is headquartered at the above-captioned address.

9. Defendant ADP TotalSource FL XVI, Inc. (hereinafter "Defendant ADP") is a professional organization that not only handles payroll for various businesses (such as Defendant Fortune)[1], but is a full-service HR Solution. Upon information and belief ADP employees acted as HR professionals on behalf of Defendant Fortune during Plaintiff's employment with Defendant Fortune.

10. The adverse actions (as discussed herein) taken against Plaintiff on the advice or guidance of an employee of Defendant ADP and/or in discussion with Defendant Fortune's management would create a joint employer relationship for purposes of the instant action.

11. Therefore, Plaintiff hereby avers that Defendant Fortune and Defendant ADP are single and/or join employers in this matter.

12. At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein during the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendants on or about April 11, 2022, as the Manager of IT.

15. Throughout his tenure with Defendants, Plaintiff's job title changed several times, though his job duties remained the same.

---

[1] Defendant ADP is the entity that appeared on the paystubs that Plaintiff was issued during his employment with Defendants and his termination letter.

16. At the time of his unlawful termination on or about March 14, 2025 (discussed *infra*), Plaintiff's job title was "Head of IT Operations."

17. During his tenure with Defendants, Plaintiff was initially supervised by Chief Technology Offer, Jonathan Rivers ("Rivers" - Caucasian); however, during the last approximate nine (9) months of his employment with Defendant, he was supervised by Chief Human Resources Officer, Mike Kiley ("Kiley" – Caucasian).

18. Throughout his employment with Defendants, Plaintiff was a hardworking employee, who performed his job well.

19. Plaintiff is an African American/Black male and was the only African American manager within his department at Defendants.

20. In fact, upon information and belief, throughout Plaintiff's entire tenure with Defendants, there were less than five (5) African American/Black male managers, all of whom were terminated by Defendants.

21. As a result of the foregoing, Plaintiff was very vocal that Defendant Fortune lacked diversity, including that that there was a disproportionate number of Caucasian managers and executives within Defendant Fortune, and that African American/Black employees were treated differently than non-black employees.

22. Plaintiff expressed these concerns primarily (but not exclusively) during leadership meetings with the current CEO of Defendant Fortune (the former CFO), Anastasia Nyrkovskaya ("Nyrkovskaya" – Caucasian) and the former CEO of Defendant Fortune, Alan Murray ("Murray" – Caucasian).

23. However, when Plaintiff raised his aforesaid concerns of racial discrimination, he was consistently dismissed, overlooked, and not taken seriously.

24. At the beginning of 2024, Plaintiff expressed that he would like to be considered for an executive level position when it became available (as he knew the individual occupying this position would soon be leaving the company).

25. However, when Plaintiff spoke with Rivers about the aforesaid executive position and how he thought he was the perfect person for the role, in addition to adding diversity to Defendants' executive level, Rivers did not take him seriously and stated: "I don't think you really want to do that role" and further said: "our numbers aren't that bad compared to the number of Black people in the United States."

26. After expressing his concerns regarding the lack of racial diversity within Defendant Fortune, Plaintiff was consistently referred to as "aggressive," told that he was "hell bent" on certain things, told he needed to "fix [his] face," and told he needed to dress professional, despite never dressing unprofessional (all negative stereotypes that Plaintiff perceived to be directed towards his race).

27. From Plaintiff's observations, the aforesaid discriminatory/retaliatory comments were never made to non-black employees.

28. Plaintiff tried his best to ignore the aforesaid negative comments and stereotypes, but the discriminatory/retaliatory behavior continued.

29. In addition to the foregoing, Plaintiff consistently spoke with Rivers, Kiley, and Nyrkovskaya about taking on additional responsibilities in order to eventually advance his career within Defendants.

30. However, Plaintiff's attempts to advance his career were consistently overlooked by Rivers, Kiley, and Nyrkovskaya in favor of other non-Black employees.

31. In fact, during a restructuring by Defendants in or about June 2024, Defendants gave additional responsibilities (including job duties Plaintiff was highly qualified for) to his peer Rajeev Maskey ("Maskey" – Asian), who was not qualified for the role he was promoted too, and as a result, quit due to the pressures.

32. After Maskey left Defendants, in or about October 2024, Defendants again, instead of promoting Plaintiff to a new role or allowing him to undertake additional responsibilities, promoted an underqualified individual, Georgene Huang ("Huang" – Asian), to overtake additional responsibilities.

33. In response to the aforesaid disparate and discriminatory assignment of additional responsibilities and promotions, Plaintiff complained to Kiley that he believed he was not being given the same opportunities as his aforesaid Asian counterparts because of his race; however, his concerns were again never properly investigated and dismissed by Kiley.

34. In or about January 2025, Plaintiff yet again complained of race discrimination and disparate treatment of African American/Black employees at Defendant Fortune.

35. Plaintiff's January 2025 complaint however was addressed the same way as it had been in the past and subsequently dismissed.

36. Upon information and belief, none of Plaintiff's aforesaid complaints regarding racial disparities or discrimination (discussed *supra*) were ever properly investigated.

37. In close temporal proximity to Plaintiff's final complaint of discrimination, he was terminated effective February 26, 2025, based upon Defendants' pretextual assertion of an alleged job elimination.

38. Upon information and belief, Plaintiff's job responsibilities were given to Huang, who had only been employed with Defendants for less than one year.

39. Upon information and belief, there were several open and available positions within Defendant Fortune that Plaintiff could have performed at the time of his involuntary separation; however, Defendants did not consider Plaintiff for and/or offer Plaintiff any of those positions.

40. Following Plaintiff's separation, he was offered a severance agreement to waive and release all legal claims, which he did not sign.[2]

41. Based on the foregoing, Plaintiff believes and therefore avers that he was subjected to a hostile work environment, not promoted, and ultimately terminated because of his race and/or in retaliation for complaining of racial discrimination.

## COUNT I
### Violations of Title VII
**[1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment**
-Against Both Defendants-

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff was subjected to a hostile work environment through disparate and discriminatory treatment because of his race and/or complaints of racial discrimination.

44. Plaintiff avers that his race was a motivating or determinative factor in Defendants' decision to deny him promotions, terminate his employment, and not consider him for additional open positions upon his involuntary separation.

45. Plaintiff also believes and avers that he was denied promotions, terminated, and

---

[2] *See Wan Sun Penny v. Winthrop-University Hosp.*, 883 F. Supp. 839, 846 (E.D.N.Y. 1995) (severance offer "evidence is admissible is when, contemporaneously with the notice of termination, the employee is asked to sign a waiver and release of all claims in order to receive severance pay."); *D'Alosio v. EDAC Techs. Corp.*, No. 16-cv-769 (VAB), 2017 U.S. Dist. LEXIS 60873, at *6 (D. Conn. Apr. 21, 2017) ("[T]he severance agreement that [defendant] offered 'contemporaneously with the notice of termination' and that required [the plaintiff] to 'sign a waiver and release of all claims in order to receive severance pay' may be admissible and therefore not blocked by Rule 408.").

not considered for additional open positions upon his involuntary separation because of his complaints of racial discrimination.

46. Defendants' actions as aforesaid constitute violations of Title VII.

### COUNT II
### Violations of the New York State Human Rights Law ("NYSHRL")
[1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment
-Against Both Defendants-

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Plaintiff incorporates all prior Counts into claims asserted under the NYSHRL herein, as the NYSHRL is a single state statute prohibiting all actions taken against Plaintiff as set forth in this Complaint and each prior Count.

### COUNT III
### Violations of the New York City Human Rights Law ("NYCHRL")
[1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment
-Against Both Defendants-

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff incorporates all prior Counts into claims asserted under the NYCHRL herein, as the NYCHRL is a single city statute prohibiting all actions taken against Plaintiff as set forth in this Complaint and each prior Count.

### COUNT IV
### Violations of Section 1981
[1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment
-Against Both Defendants-

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff was subjected to a hostile work environment through disparate and

discriminatory treatment because of his race and/or complaints of racial discrimination.

53. Plaintiff also believes and avers that he was denied promotions, terminated, and not considered for additional open positions upon his involuntary separation because of his race and/or complaints of racial discrimination.

54. Defendants' actions as aforesaid constitute violations of Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation at the hands of Defendants until the date of verdict. Plaintiff seeks reinstatement or all available damages in the absence of reinstatement being permitted or deemed appropriate by the Court;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to emotional distress damages under Title VII/Section 1981 and corresponding state/local laws);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

E. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                    Respectfully submitted,

                    **KARPF, KARPF & CERUTTI, P.C.**

By: /s/ Adam Lease
                    Adam C. Lease, Esq.
                    8 Interplex Drive, Suite 210
                    Feasterville-Trevose, PA 19053
                    (215) 639-0801
                    alease@karpf-law.com
                    *Attorney for Plaintiff*

Dated: October 7, 2025